UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
PATRICIA ROWLAND ZUMMO

                Plaintiff,                    **MEMORANDUM & ORDER**
                                                    11 CV 6256 (DRH)(WDW)
        - against -

ANTHONY ZUMMO, EILEEN CALLAHAN,
and VERIZON COMMUNICATIONS INC.,

                Defendants.
----------------------------------------------------------X

**APPEARANCES:**

**Attorneys for Plaintiff:**
**WILLIAM E. BETZ, ESQ.**
1010 Northern Blvd., Suite 208
Great Neck, New York 11021
By:    William E. Betz

**Attorney for Defendants Anthony Zummo and Eileen Callahan:**
**KLG LUZ & GREENBERG**
370 Lexington Ave., Floor 24
New York, New York 10017
By:    Thomas J. Luz

**Attorneys for Defendant Verizon Communications Inc.:**
**DUANE MORRIS LLP**
1540 Broadway
New York, New York 10036
By:    Joanna R. Varon

600 Grant Street, Floor 50
Pittsburgh, Pennsylvania 15219
By:    James P. Hollihan


**HURLEY, Senior District Judge:**

        On November 10, 2011, plaintiff Patricia Rowland Zummo ("plaintiff" or "Patricia")

commenced this action in New York state court, alleging fraud against defendants Anthony

Zummo ("Anthony") and Eileen Callahan ("Callahan"), and breach of contract against

defendants Anthony and Verizon Communications Inc. ("Verizon"). On December 22, 2011, Verizon removed plaintiff's action to this Court citing preemption under the Employment Retirement Income Security Act, 29 U.S.C. §§ 1001, *et seq*. ("ERISA"), as the basis for federal jurisdiction. Presently before the Court is plaintiff's motion to remand back to state court. For the reasons set forth below, plaintiff's motion is denied.

## BACKGROUND

The following facts have been taken from the Complaint. Patricia and Anthony Zummo were married in 1982 and remained married as of the date of filing. (Compl. ¶¶ 5, 6.) In or about 2002, Anthony left the marital residence and thereafter took up residence with Callahan, his girlfriend. (Compl. ¶ 8.) During the course of his employment with Verizon, for whom he worked until about 2005, Anthony acquired rights to benefits under the company's pension plan (the "plan" or "pension plan"). (Compl. ¶ 10.)

In December 2005, Anthony visited plaintiff at the former marital residence and presented her with a document entitled "Consent of Spouse." (Compl. ¶¶ 13, 16.) Under the terms of the pension plan, if a married participant elects for payment in any form other than a "Qualified 50-Percent Joint and Survivor Annuity," that participant must obtain the written consent of his or her spouse. (Pension Plan at 50, § 6.5 "Spousal Consent," Pl.'s Ex. A; Compl. ¶ 22.) Plaintiff alleges that in consideration for her signing the consent form, Anthony promised to pay her one-half of the value of the pension. (Compl. ¶ 22.) Sometime thereafter, Anthony elected to collect his pension from Verizon in the form of a lump sum payment of $533,296.93. (Compl. ¶ 26.) Plaintiff, however, did not learn that her husband had cashed out his pension until

the couple initiated divorce proceedings in 2011. (Compl. ¶ 27.) By that time, Anthony had dissipated the funds without making any payments to plaintiff. (*Id.*)

The subject spousal consent was only valid if "witnessed by a notary public." (Pension Plan at 50.) Plaintiff, however, alleges that no notary was present when she executed the document. Instead, Anthony allegedly presented the document after the fact to Callahan, a notary herself, who notarized it outside Patricia's presence. (Compl. ¶ 23.)

On November 10, 2011, Patricia filed a lawsuit in state court alleging fraud against Anthony and Callahan and breach of contract against Anthony and Verizon. Plaintiff's breach of contract claim against Verizon alleges that "notwithstanding that the documents submitted by [Anthony] to Verizon were not signed and dated by Plaintiff in the presence of a Notary, Verizon paid over to Zummo the full amount of his accrued pension in a lump sum." (Compl. ¶ 59.) Therefore, plaintiff alleges, "by failing to enforce its own requirements for the submission of an application for payment of [Anthony's] pension, [Verizon] violated its contract with the Plaintiff by paying over to [Anthony] the full amount of his pension without making adequate inquiry for the protection of the Plaintiff." (Compl. ¶ 61.) On December 22, 2011, Verizon removed the case to this Court, arguing that Plaintiff's contract claim is preempted by ERISA because it seeks to recover benefits under the terms of an ERISA-governed pension plan. Plaintiff's present motion seeks to remand the action back to state court.

## DISCUSSION

### I.  LEGAL STANDARD

Under 28 U.S.C. § 1441, a defendant can remove a civil action filed in state court to a federal district court only if the district court has original subject matter jurisdiction over the

action. *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 271 (2d Cir. 1994); *see also Chichra v. Chichra*, 2012 U.S. Dist. LEXIS 75985 at *1 (E.D.N.Y. May 29, 2012).

Verizon's sole asserted basis for subject matter jurisdiction rests upon federal question jurisdiction pursuant to 28 U.S.C. §1331 through the preemption provisions of ERISA, 29 U.S.C. § 1144(a). Verizon bears the burden of showing that the case is properly before the Court. *See Grimo v. Blue Cross/Blue Shield of Vt.*, 34 F.3d 148, 151 (2d Cir. 1994) (where federal jurisdiction is purportedly based on ERISA preemption, "the defendant bears the burden of demonstrating the propriety of removal"); *see also Estate of Gottesman v. Verizon N.Y., Inc.*, 2009 U.S. Dist. LEXIS 28928 at *9 (E.D.N.Y. Apr. 9, 2009) (Upon plaintiff's motion to remand, the burden falls upon the defendant "to prove that jurisdiction exists and that the case is properly in federal court.").

The federal question statute, 28 U.S.C. § 1331, gives the district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." "Ordinarily, determining whether a particular case arises under federal law turns on the 'well-pleaded complaint' rule." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) (citing *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9-10 (1983)). Under this rule, a defendant generally may not remove a case to federal court unless a federal question appears on the face of the complaint. *See Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987). This rule is premised on the principle that a plaintiff is generally free to choose his law and forum. *See id*. However, "a plaintiff's choice in pleading his complaint is not absolute." *Bellido-Sullivan v. Am. Int'l Grp.*, 123 F.Supp. 2d 161, 164 (S.D.N.Y. 2000). An exception exists to allow a defendant to remove where federal law preempts a cause of action pleaded entirely on

4

state law grounds. *Davila*, 542 U.S. at 208. The Supreme Court has recognized ERISA as one of the statutes that operates within this exception. *Id.*

ERISA has the dual purposes of "'protect[ing] . . . the interests of participants in employee benefit plans and their beneficiaries by setting out substantive regulatory requirements for employee benefit plans and [providing] for appropriate remedies, sanctions, and ready access to the Federal courts." *Id.* (quoting 29 U.S.C. § 1001(b)); *see also Arditi v. Lighthouse Int'l*, 676 F.3d 294, 299 (2d Cir. 2012). ERISA's enforcement provision, 29 U.S.C. §1132(a)(or "§502(a)"), affords participants and beneficiaries with the right to bring a civil action to recover benefits due under the terms of their plans, to enforce rights under the terms of their plans, or to clarify their rights to future benefits under the terms of their plans.

To establish uniformity in enforcement, ERISA contains a sweeping preemption provision. *See Solnin v. GE Group Life Assur. Co.*, 2007 U.S. Dist. LEXIS 20955 at *21 (E.D.N.Y. Mar. 23, 2007). Therein, it states that ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in . . . this title." 29 U.S.C. § 1144(a). The Supreme Court has formulated a two-pronged test to determine when this provision applies. In *Davila*, 542 U.S. 200, the Supreme Court held that ERISA preemption occurs where: (1) "an individual, at some point in time, could have brought his or her claim under ERISA §502 (a)(1)(B);" and (2) "no other independent legal duty [ ] is implicated by a defendant's actions." *Davila*, 542 U.S. at 210; *see also Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 328 (2d Cir. 2011). The Second Circuit later clarified that under the first prong of this test, the plaintiff must show that: (a) she is "the *type* of party [who] can bring a claim pursuant to§502(a)(1)(B)"; and (b) "the *actual claim* that the plaintiff asserts can be

5

construed as a colorable claim for benefits pursuant to § 502(a)(1)(B)." *Montefiore*, 642 F.3d at 328 (emphasis in original); *see also Arditi*, 676 F.3d at 299.

## II. THE *DAVILA* TEST

### a. *Davila* First Prong

As the spousal beneficiary of her husband's pension plan,[1] plaintiff is entitled to bring an ERISA claim. *See* 29 U.S.C. § 1132(a)(1)(permitting civil actions under ERISA by the "participant or beneficiary" of a plan); *see also Estate of Gottesman v. Verizon N.Y., Inc.*, 2009 U.S. Dist. LEXIS 28928 (E.D.N.Y. Apr. 6, 2009)(suit by the spousal beneficiary under Verizon's pension plan pursuant to section 502(a)(1)(B)). Accordingly, step one of *Davila's* first prong is satisfied.

In turning to step two of the first *Davila* prong articulated in *Montefiore*,642 F.3d at 328 , which asks whether the actual claim asserted can be construed as a colorable claim for benefits, the Second Circuit has cited a distinction between the "'right to payment' and claims involving the 'amount of payment.'" *Montefiore*, 642 F.3d at 331. The former—which "implicate coverage and benefits established by the terms of the ERISA benefit plan"—represent colorable claims for benefits, whereas the latter—which implicate "the computation of contract payments or the correct execution of such payments"—are not. *Id.*

At least superficially, plaintiff's claims might at first blush appear to come under the latter category. There is no dispute, for example, that Anthony, assuming he obtained consent from plaintiff, was entitled to receive a lump-sum pension payment, or that plaintiff, as his wife, is an intended beneficiary of that plan whose consent was required. Rather, plaintiff's claim

---

[1] Under 29 U.S.C. § 1055, in the case of a living, vested plan participant, benefits automatically take the form of a "qualified joint and survivor annuity," unless the participant's spouse properly waives his or her right to such an annuity pursuant to subsection (c)(2).

6

against Verizon is that the payment should never have been made – a claim that, arguably, implicates "the correct execution of such payments." *See id.* However, the latter type of claim typically refers to the calculation of benefits that hinge on terms set forth in provider agreements between a health care provider and a plan administrator or sponsor, not the terms of the ERISA plan itself. *See id.* at 331 (citing *Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525, 530-31 (5th Cir. 2009)).

Here, the resolution of plaintiff's breach-of-contract claim against Verizon requires an examination of the language of the plan itself. The allegation suggests that Verizon violated a duty that arose from the notary requirement within the plan's section regarding spousal consent (Section 6.5 of the plan), and more indirectly from the plan's requirement that the participant obtain spousal consent before certain types of disbursements are made. *See Olchovy v. Michelin N. Am., Inc.*, 2011 U.S. Dist. LEXIS 120480, at *12 (E.D.N.Y. Sept. 30, 2011) ("[A] dispute is a colorable claim for benefits under ERISA when its resolution depends on an interpretation of the terms of an ERISA-governed employee benefit plan."). In essence, plaintiff is seeking to enforce her right to payment under the terms of the plan itself, placing her claim squarely within the enforcement provision of ERISA.

### b. *Davila* Second Prong

Under the second *Davila* prong, complete preemption under ERISA occurs only if the circumstances are such that "no other independent legal duty . . . is implicated by a defendant's actions." *Davila*, 542 U.S. at 210; *see also Montefiore*, 642 F.3d at 332 ("The key words here are 'other' and 'independent.'"). For example, in *Stevenson v. Bank of N.Y. Co.*, 609 F.3d 56 (2d Cir. 2010), the plaintiff brought state contract claims against his employer for allegedly violating a

promise not to reduce his benefits when if he was transferred to the company's Geneva office. The Circuit, in holding that ERISA did not preempt the plaintiff's state law cause of action, stated that because the claims "derive from this promise rather than from an ERISA benefits plan, their resolution does not require a court to review the propriety of an administrator's or employer's determination of benefits under such a plan." *Id.* at 61. In essence, the employer's "actual administration . . . of those plans would be unaffected." *Id.*

Plaintiff argues that Verizon is liable for breach of contract "by dint of its failure to inquire into the legitimacy of her 'consent' to her husband's election to begin taking his retirement benefits." (Pl.'s Mem. at 6.) However, the referenced "consent" requirement is found solely within the text of the Verizon Plan – nowhere else. As a result, any duty that Verizon may have possessed to establish the veracity of the consent form presented by Anthony was "inextricably intertwined with the interpretation of Plan." *Montefiore*, 642 F.3d at 332; *See also*, *Arditi v. Lighthouse Int'l*, 676 F.3d 294, 300 (2d Cir. 2012) (concluding that defendant did not breach a promise separate and independent of the plan because the plan "was the basis for the claimed benefits"); *Dillon v. Metro. Life Ins. Co.*, 832 F.Supp. 2d 355 (E.D.N.Y. 2011) (finding that no independent legal duty exists where state law breach of contract claim derives entirely from [defendant's] obligations pursuant to an ERISA plan).

Plaintiff nevertheless attempts to extricate her claim from ERISA's reach by suggesting that ERISA only preempts the "regulation" of a plan, and not its "contractual benefits." (Pl.'s Opp. at 4 ("Pension plan regulation is exclusively a federal concern. A challenge to the payment of a benefit . . . is not a challenge to *the regulation* of such a plan.")(internal citation omitted).) Because her claim implicates the "payment of a benefit" and not the manner in which defendant manages or administer its plan, plaintiff argues, the claim "constitutes [] an assertion of an

independent contractual right." (*Id.*)  This asserted distinction, however, does not implicate any duty of Verizon's independent of the plan, nor do the cases cited by plaintiff suggest that the distinction has any effect on preemption.

Plaintiff first attempts to draw support for the purported distinction from *Smith v. Dunham-Bush, Inc.*, 959 F.2d 6 (2d Cir. 1992).  Plaintiff suggests that the claim advanced therein, *viz.* that defendant violated an oral promise to maintain the employee's level of benefits after being relocated to a new branch office, was preempted because the plaintiff was challenging "the regulation of the defendant's pension plan," (Pl.'s Br. at 3).  The claim here, plaintiff argues, is much different:  whereas, *Dunham-Bush* "constitute[d] a challenge to the regulation of the company's pension plan," the present claim implicates "the contractual benefit of that plan." (*Id.* at 4.)

It is not entirely clear what plaintiff means by the term "regulation" of the pension plan. Plaintiff's use of language from *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987), wherein the Court stated that "pension plan regulation [is] exclusively a federal concern," *id.* at 46, suggests that plaintiff is confusing the government's role in regulating pension plans[2] with "Verizon's regulation of its plan" (Pl.'s Br. at 3).  Giving plaintiff the benefit of the doubt, however, she is presumably using the term "regulation" synonymously with "operation" or "administration" in the context of Verizon's running of its pension plan.  The following passage from *Dunham-Bush* sheds some light on this argument:

> Although appellant attempts to fashion his complaint as one relating only to his pension benefits, and not to any plan, the existence of Dunham-Bush's pension plan would be a critical factor in establishing the extent of liability under state common

---

[2] *See Smith v. Dunham-Bush, Inc.*, 959 F.2d 6, 8 (2d Cir. 1992)*(*"By careful design, Congress intended the statute to avert a 'patchwork scheme of [state] regulation' which would necessarily introduce 'considerable inefficiencies in benefit program operation.'")(quoting *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11 (1987)).

9

> law. In reality, his suit represents an attempt to supplement the plan's express provisions and secure an additional benefit. Smith's cause of action therefore relates not merely to his benefits, but to the essence of the plan itself.

*Dunham-Bush*, 959 F.2d at 10.

First, *Dunham-Bush* is not distinguishable from the present case in the way that plaintiff suggests. The claim here also "relates to the essence of the plan itself," namely the duties that purportedly arise from the plan's "consent" requirement. Second, *Dunham-Bush* was partially abrogated by *Stevenson*, 609 F.3d 56, in a manner that actually works in plaintiff's favor. In *Stevenson*, much like in *Dunham-Bush*, the plaintiff claimed that his employer broke a promise not to reduce his pension benefits if he agreed to transfer to a different office. The Circuit there held that ERISA did not preempt the state law contract claims because they "derive from this promise rather than from an ERISA benefits plan, their resolution does not require a court to review the propriety of an administrator's or employer's determination of benefits under such a plan." *Id.* at 61. In so holding, the Circuit noted that since *Durham-Bush* was decided, it has come to see its "broad view of preemption" in that case as "misguided." *Id.* at 62 (citing *Gerosa v. Savasta & Co.*, 329 F.3d 317, 327 n.8 (2d Cir. 2003)). Nevertheless, even under this newer, more narrow view of preemption, plaintiff's application to remand must still be denied. Unlike, the independent promise at issue in *Stevenson*, the duty allegedly breached by defendant here "derives entirely from the particular rights and obligations established by the benefit plan[]." *Davila*, 542 U.S. at 213.

Plaintiff also relies on two other cases *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1 (1987) and *James v. Fleet/Norstar Fin. Group, Inc.*, 992 F.2d 463 (2d Cir. 1993), in support of its argument for a distinction between the "regulation of plans" and the "payment of benefits"

10

under those plans, (*see* Pl.'s Br. at 5). In *Fort Halifax*, the Supreme Court recognized a distinction under ERISA between "benefit plans" and "benefits." Recognizing this distinction was necessary because Congress, in passing ERISA, did not intend to govern all "benefits" under the statute, just those "benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation." *See Fort Halifax*, 482 U.S. at 11-12. Congress therefore sought only to regulate "benefit plans," rather than all "benefits." The *Fort Halifax* case involved a Maine state statute that required employers who close plants to give certain workers one week's severance pay for each year that they worked for the company. *Id.* at 5. The statute mandating the severance payments, the Court concluded, "neither establishes, nor requires an employer to maintain, an employee welfare benefit 'plan' under [ERISA]." *Id.* at 6. ERISA, therefore, did not preempt that statute. The *Fort Halifax* Court further noted that the statute

> requires no administrative scheme whatsoever to meet the employer's obligation. The employer assumes no responsibility to pay benefits on a regular basis, and thus faces no periodic demands on its assets that create a need for financial coordination. . . . To do little more than write a check hardly constitutes the operation of a benefit plan.

*Id.* at 12.

Similarly, in *James*, as part of the employer's announcement that one of its banking service centers would be closed and that all employees at that location would be laid off, it made an oral promise to those employees that it would pay them sixty days of wages following their termination. Much like in *Fort Halifax*, the "nature of the payments" in *James* "did not require an ongoing administrative employer program to effectuate them." *James*, 992 F.2d at 467.

The plan implicated in this case is far different than either of those in *Fort Halifax* or *James*. Verizon's plan here is part of a vast and complex administrative apparatus that maintains

and disperses pension benefits to thousands of Verizon employees. It does not in any way resemble the type of one-time benefit payments examined in *Fort Halifax* and *James*.

Returning to plaintiff's argument, the controlling distinction is therefore not between the "regulation of a plan" and "the payment of benefits," but rather between benefits that are derived from plans that "require an ongoing administrative employer program to effectuate," and benefits that are not. Here, as discussed above, the subject pension plan is indeed such a plan, the lump-sum pension payment at issue was made pursuant to that plan, and the contractual duty that Verizon allegedly breached arises solely from that pension plan. The inquiry ends there. As plaintiff's claims against Verizon satisfy both prongs of the *Davila* test, those claims are preempted by ERISA.

## CONCLUSION

For the reasons set forth in this Memorandum and Order, plaintiff's claims against Verizon are preempted under ERISA and plaintiff's motion to remand to state court is denied.
SO ORDERED.

Dated: Central Islip, N.Y.
       July 31, 2012                                                                   /s/
                                                                          Denis R. Hurley
                                                                          United States District Judge